[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 7003
This case was referred to the Regional Family Trial Docket as a custodial dispute arising within a dissolution action.
Based upon a preponderance of the credible, relevant and legally admissible evidence, this court finds:
The parties were married on December 31, 1984 in Sterling, Connecticut. They have resided continuously in this state for at least one year preceding this date. Their marriage has broken down irretrievably with no reasonable prospect of reconciliation. There have been two minor children issue of this marriage:
Jessica M. Bogue, born January 25, 1986
Sarah M. Bogue, born July 31, 1987.
No other minor children have been born to the plaintiff since the date of the marriage of the parties. Neither the State of Connecticut, nor any of its political subdivisions, are contributing to the support of the plaintiff, the defendant or their minor children.
Mother and father present starkly differing views of the custodial and the financial issues.
Defendant father, his mother and his fiance were all credible witnesses. Their testimony was moderate and consistent. Given opportunities to damage mother, they replied with restraint. The tenor and contents of their testimony matched. Father testified simply, with dignity, as did all his custodial witnesses.
Plaintiff mother's rambling and conflicting claims, the opportunistic discrepancies between her testimony in deposition, her statements to the evaluator and her courtroom testimony, all lead to the conclusion that plaintiff mother is not credible. Her five witnesses uniformly mirrored her extremism. They adopted her opinions. They accepted and repeated, and occasionally embellished, her version of the facts.
Mother alleges, among many other claims, sexual abuse of her daughter by her husband (the first incident when the child was 10 months of age and covered with a diaper) and a marijuana crop of CT Page 7004 husband's that earned $200,000 a year for 15 years (the observant children consistently deny the plantings, the harvesting, the presence of customers or the sales of any such drug and mother offers no evidence establishing the existence of $3,000,000 in their very modest and limited circumstances.)
Custodial issues are best summarized by quoting Robin Grant-Hall, Ph.D., court appointed independent evaluator, as set forth in her evaluation update of September 4, 1996:
 "It is this examiner's opinion that Ms. Bogue is incapable of parenting her at this time. It is emotional abuse for the girls to be in her presence while because they are frightened of her anger and they know that she does not how they feel at this time. It is recommended that Mr. Bogue be granted physical of Sarah and Jessica. At this time, visitation with mother should be until Ms. Bogue becomes involved in both individual and family therapy (1) takes responsibility and acknowledges her problematic behavior, (2) that she can meet her daughters' emotional needs, (3) protects her from contact with her boyfriend and (4) acknowledges and ceases alcohol abuse."
On December 3, 1996, in the midst of her trial testimony, Dr. Grant-Hall acceded to the court's request and interviewed Sarah and Jessica again, bringing her September evaluation fully to date. She reported that mother, uncharacteristically, had focused on the girls during their Thanksgiving visit with her. That visit took place three days after this trial had begun. She took them roller skating. The girls were euphoric. Mother still yelled at them and cursed, but less. Mother was still drinking, but less. Mother still had a boyfriend present, but not the boyfriend who had upset them so severely. Their father was still insulted, made fun of and cursed at by mother's brother and her father, all while mother stood silently by.
Dr. Grant-Hall saw the Thanksgiving incident as a meaningful breakthrough. This court does not. It was a single, modest bloom sprouting in a vast and desolate landscape. The unacceptable behavior of mother and her family is so ingrained it remains in place, even when mother is on her best behavior in the midst of this custody trial.
Life in the Bogue home was chaotic. Stress was rampant. The children reflected the chaos. Jessica suffered from anorexia nervosa so severely that she almost died before being admitted to Newington Children's Hospital. Sarah suffered from a compulsive CT Page 7005 disorder during which she pulled out her eyelashes and plucked off her eyebrows.
Mother accused father of sexual abuse of Jessica when the child was ten months of age. The charge was investigated by DCF and dismissed. The charge was repeated a second time when Jessica was admitted to Newington Hospital, based upon a claim of vaginal touching with a towel while father was drying the child. As a result of that charge, father was unable to visit with Jessica for almost two years. Investigated by DCF and the state police, once again DCF closed its file and the state police took no action.
Mother believes that an appropriate method of disciplining the children is "natural consequences." Sarah was allowed to drive her bicycle off their four foot high open porch to learn to appreciate the danger.
Mother claimed Sarah fell from a horse and sustained serious head injuries while in the care of father and his fiance. Father and Krista Brewer, who were present, testify believably that Sarah merely slipped from the horse and landed on her feet. Nevertheless, mother took Sarah to a neurologist, who scheduled an MRI, feeling it was crucial information if the child sustained serious damage, as her mother claimed. The doctor also urged that a headache calendar be maintained. Mother did not bring Sarah for the MRI although she had the child for the time period the examination was scheduled. Nor did she mention the headache calendar to father nor send it along for completion when Sarah was with him.
Mother denied the children access to their paternal grandparents.
Mother began a campaign calculated to document claims that father was guilty of a pattern of physical abuse, stalking, harassment and violation of court orders. She offered an eager father surreptitious opportunities to meet with her, or see the children contrary to schedule, and used his presence to further her campaign.
Plaintiff mother contacted the Domestic Violence Hotline. A worker for that agency accepted all her claims and became her zealous advocate with the court system, its prosecutors, DCF and the State Police. "I did no independent fact finding. I advocated CT Page 7006 on her behalf" Pamela Roberts, the agency worker, testified.
Contrary to court orders, mother entered onto father's property and posted a note on his door. She harassed and stalked Mr. Bogue's mother and brother in her automobile. She did the same to Mr. Bogue while he was walking the road. She used calculated exhibitions of anger and rage to intimidate Mr. Bogue and his family. The children were also intimidated and fearful of her flaring behavior. She interfered with one of Dr. Grant-Hall's evaluation sessions with the children and unleashed her rage in a manner that Dr. Grant-Hall testified intimidated her as well. Mr. Bogue's elderly mother testified credibly to her fear of Mrs. Bogue, as did Krista Brewer. Mother agreed to accommodate father's request to vary a visitation schedule, only to call the police and seek his arrest for breaching the court order. She would be absent when the children were returned by their father and then accuse him of not returning the children in a timely manner. She has told the children they were mistakes. Dr. Robin Grant-Hall, the court appointed independent evaluator, concluded that plaintiff mother exhibited "highly manipulative, sociopathic behavior."
In August of 1996, Dr. Grant-Hall found mother's behavior so potentially damaging to the children a motion to modify custody was filed. Judge Robert A. Martin spoke to the children in chambers after which he modified the custodial arrangement, subject to this scheduled trial, by transferring custody of the children to the father during the school week.
The Bogue marriage was dysfunctional. Each parent played a part, but Mr. Bogue sought to avoid the dissolution and to retain a parenting role with his needy children. Mrs. Bogue thwarted reconciliation and rebuffed his attempts to civilize the children's environment. She used father's naivete to compromise him. She ignored court requests and therapeutic recommendations that she enter into therapy. She interfered with the normal relationship of father and his daughters. She unreasonably extended the litigation. Her extreme behavior was responsible for the final breakdown of the marriage.
Though not without some fault in the early difficulties of the marriage, Mr. Bogue has taken major steps to improve his life and his relationship with his daughters. He accepts medication, and is thus able to control the impact of his pain, the post traumatic stress disorder and the frustrations of being disabled. CT Page 7007 He is in therapy and he has found, in Krista Brewer, a good and sensitive partner whom the girls appreciate. He has taken the time and made the effort to learn more about his daughters and their problems. He has become comfortable dealing with family psychological issues. He has risen above his physical pain and beyond his disabilities to focus on family needs and is striving to meet those needs.
Both Barbara Bogue, father's mother, and Krista Brewer, father's fiance, are appropriate and trustworthy parenting figures whose presence in the childrens' lives are beneficial. Other members of Mr. Bogue's family are not similarly endorsed solely because they did not testify and so could not be weighed by the court. There has been no credible suggestion or indication that any of them are inappropriate.
Joint custody is not feasible in this fact situation. Mother takes no responsibility for her problematic behavior, does not acknowledge her alcohol abuse, has not demonstrated that she can meet her daughters' emotional needs for an extended period of time, is not sufficiently respectful of father's parenting skills, is not appropriately child focused, does not control the behavior of her family or friends in the presence of father or the two children, nor is she adequately protective of the children, to be given an authoritative role in their lives at this time.
It is this court's hope that no future court would consider granting Mrs. Bogue an enhanced role in the childrens' lives unless and until she has undertaken and clearly benefited from extensive therapy with a psychologist or psychiatrist of recognized skill who offers a detailed evaluation and reports the results of a series of random drug and alcohol tests.
In 1967, defendant father served in Viet Nam, where his combat experiences resulted in post traumatic stress disorder.
In the early 1980s, his left hand was crushed in a work accident, causing a 20% disability and resulting in chronic pain. The resultant compensation award was used towards the purchase of land at 276 North Sterling Road in Sterling.
On October 11, 1981, father's leg was almost severed in a chain saw accident, resulting in a 30% disability, a limp, another source of chronic pain and a net settlement of $51,000. CT Page 7008
The parties married on December 31, 1984, one month before mother's twenty fourth birthday. Father was thirty seven.
In October of 1986, father severely injured his back in a fall from rigging, damaging three discs. He can no longer work. He is disabled. As compensation for his permanent injuries, defendant father has collected lump sum settlements totaling $115,364.88. Now 49 years of age, father's net income from Social Security disability, veteran's disability and Medicare, is $258 a week. Father's disabilities do not impair his ability to care for himself or his children.
The 35 year old plaintiff mother has good health. A high school graduate, she is employed as a certified nursing aide and is readily employable. Courses that would offer her employment advancement and an increased income are comfortably within her reach, she has advised the court. Her current net income is $302 a week.
Father received $43,745 from his parents. The moneys were loans. Repayment was expected and some was made. Plaintiff mother's refusal to sign promissory notes does not render the loans gifts. Father used his pre-marital funds, compensation for pre-marital injuries and loans from his parents to purchase and improve the two homes and the 40.1 acres in Sterling.
Mother has advised the court that she plans to leave 276 North Sterling Road within the next 90 days and relocate nearby. Father plans to remain at 316 North Sterling Road. The court is unable to adopt the valuations of the real estate offered by father's expert witness. Nor does the court accept mother's claim that the real estate contains 70 acres and should be so evaluated.
 The value of 276 North Sterling Road, containing 34.7 acres, is $ 55,000
 The house and three acres at 276 North Sterling is valued at $100,000
 The house and 2.4 acres at 316 North Sterling Road is valued at $ 25,000 -------- $180,000
CT Page 7009
Mortgage balances are: 276 North Sterling Road $16,000
 316 North Sterling Road $ 7,000 ------- $23,000
Value $157,000
The value will be further reduced by the costs of surveying, broker's fees, financing fees and all other reasonable closing costs.
All three counsel were effective and professional. At the opening of trial, which had been scheduled well in advance, Attorney Glen G. Baron announced that Mrs. Bogue had asked him to withdraw. He asked to be excused. Mrs. Bogue supported his request but agreed she was not capable of proceeding unassisted. Attorney Baron was directed to proceed. Throughout the trial, the court inquired of Mrs. Bogue whether she and her attorney were working well together. She repeatedly reassured the court and voiced satisfaction with Attorney Baron's efforts. Attorney Baron acquitted himself well under difficult circumstances.
ORDERS:
Having reviewed the evidence, the sworn financial affidavits, the testimony of the witnesses and the exhibits, in the context of the required considerations of Title 46b, Chapter 815j of the Connecticut General Statutes, the following orders shall apply:
1. Dissolution
Dissolution shall enter on the grounds of irretrievable breakdown.
2. Custody
Plaintiff father shall have sole custody of the two minor children, Jessica and Sarah.
3. Mother's Counseling
a. Mother shall immediately participate, at her own expense, in an ongoing, long term, intensive individual counseling program with a counselor recommended by Dr. Robin Grant-Hall, on a CT Page 7010 schedule chosen by said counselor.
b. Mother's counselor is to schedule a series of random drug and alcohol tests for Mrs. Bogue.
c. Mother's counselor is to be given a copy of this decision and the reports and evaluations of Dr. Robin Grant-Hall.
d. Mother's counseling is not to be confidential. Her progress and status are to be available to the court, counsel for the minor children, a court appointed evaluator and a family services counselor, as the court may from time to time decide.
e. Every ninety days, mother's counselor shall forward a report of mother's status to Dr. Robin Grant-Hall who is empowered to share the reports with counsel for the minor children if she deems it appropriate.
f. Further, mother shall cooperate with and participate in the children's counseling, at Mr. Bogue's expense, whenever sought by the children's therapist.
g. Failure of mother to participate in such counseling or testing shall not be a basis for findings of contempt but, in the best interests of the children, shall limit her access to the children until counseling is renewed.
h. Any behavior that results in cessation of access may be referred for court review.
4. Mother's Access
a. Once mother's counseling has begun and as long as she continues to cooperatively and conscientiously participate in both the counseling and the random alcohol and drug testing detailed above, mother shall have access to the children on:
 1. alternate weekends, Saturdays and Sundays from 10 am to 6 pm;
 2. alternate Wednesdays following each alternate weekend from 5 to 7:30 pm
 3. Thanksgiving, Christmas Day and Easter from 10 am to 3 pm and
CT Page 7011
4. Mother's Day from 10 am to 6 pm.
b. Because of the unfortunate behavior of mother's friends and family during their time with the children, and the damaging impact of that behavior on the minor children, no one shall share mother's access to Jessica and Sarah unless and until they each have conscientiously and cooperatively participated in one full session with the children's counselor, or with another counselor chosen by the childrens' counselor, at their own expense. If the children's counselor, or her nominee, determines at a later date that the children would benefit from additional counseling for any friend or family member already counseled, the access of such friend or family member to the children will cease until additional counseling has been completed to the satisfaction of the children's counselor. Any behavior that results in cessation of access may be referred for court review.
c. Because of the late date hereof, mother and her guests shall have access to the children on December 25, 1996 from 10 am to 3 pm without the obligation to comply with the counseling directives herein set forth. All other access will be conditioned upon compliance with the counseling directives.
d. All the details of all access drop offs and pick ups will be determined by father, including but not limited to locations, schedules, choices of drivers, occupants and vehicles, which father may change from time to time as he sees fit.
5. Father's Counseling
a. Defendant father shall continue individual therapy as his therapist recommends, at his expense.
b. Defendant father shall forthwith provide all releases needed for the children's counseling needs.
c. Father's counseling is not to be confidential. His progress and status are to be available to the court, counsel for the minor children, a court appointed evaluator and a family services counselor, as the court may from time to time decide.
6. Child Support
a. In accordance with the Child Support Guidelines, plaintiff CT Page 7012 mother shall pay defendant father $112.00 a week as support for the benefit of the minor children.
b. Payment shall be by way of contingent wage garnishment.
7. Telephone
a. The children shall be free to telephone their mother at any reasonable time.
b. Plaintiff mother shall not telephone defendant father's home, unless an immediate emergency exists. Family history dictates that mother's ability to harass or intimidate be limited until she gains parenting insights through counseling.
8. Social Security
a. If a retroactive lump sum award is made for the children by Social Security, those funds are to be held by defendant father and applied towards the children's well being, whether for counseling, medical care, clothing or such other expenses as father, in his discretion, shall elect.
b. Plaintiff mother shall transfer any and all accounts held for the benefit of, or in the name of either or both children, to the father within thirty days hereof. Father shall maintain and use such accounts for the benefit of the children in his discretion.
9. Medical Insurance
a. If either parent has health insurance available as a benefit of employment, that parent shall forthwith enroll the children therein and immediately advise the other parent in writing of the plan and its benefits.
b. All unreimbursed health care services for the children of any kind shall be shared equally by mother and father.
10. Real Estate
a. All of plaintiff mother's interests in real estate in Sterling, Connecticut, is hereby transferred to defendant father.
b. Plaintiff mother shall continue to live in 276 North CT Page 7013 Sterling Road, Sterling, Connecticut, for a period of ninety days from this date. She shall vacate those premises, broom clean, no later than the ninetieth day, time being of the essence.
c. Upon timely vacating, plaintiff mother shall receive a total of $15,000 from defendant father as follows:
 I. $9,000 paid directly to mother's counsel, Attorney Glen G. Baron, on her behalf. The balance of Attorney Baron's fee is to remain mother's responsibility,
and
ii. $6000 paid directly to plaintiff mother.
d. Defendant father shall be responsible for any and all mortgages, taxes, insurance and other costs associated with said real estate and shall hold plaintiff wife harmless therefrom except as set forth below.
e. Notwithstanding the above, mother shall remain responsible for the mortgage on the home and for all the utilities thereon for the period of her occupation thereof.
11. Parent Loans
Defendant father shall be solely responsible for the loans made to him by his parents.
12. Counsel for the Minor Children
a. Defendant father shall pay $25,000 to Counsel for the Minor Children, Attorney George L. Kennedy, which sum the court finds to be fair and reasonable payment for his services.
b. Payment shall be in the amount of $2500 per month beginning the first day of February 1997, and the first day of each month thereafter until the total sum has been paid in full.
c. No interest shall apply thereon unless and until payment is received after the first day of any scheduled month, whereupon legal interest shall apply on the entire unpaid balance until the account is brought current.
13. Dr. Robin Grant-Hall
CT Page 7014
a. Defendant father shall be responsible for the full balance due Dr. Robin Grant-Hall. Payment to Dr. Grant-Hall is to be made in six equal sums over a six month period beginning February 1, 1997, and on the first day of each of the next five months thereafter.
b. No interest shall apply thereon unless and until payment is received after the first day of any scheduled month, whereupon legal interest shall apply on the entire unpaid balance until the account is brought current.
14. Personal Property
Each party shall maintain the personal property currently held by them.
15. Alimony
Each party shall be responsible to the State of Connecticut for alimony in the amount of $1 per year until the youngest child reaches her majority.
16. Tax Exemption
a. If defendant father does not file an IRS or Connecticut income tax return, plaintiff mother shall take both children as her exemptions.
b. If father files either or both returns, each party shall claim one exemption. When only one child is available for exemption purposes, the exemption shall be alternated.
17. Debts
Each party shall be responsible for the financial obligations listed on their financial affidavits presented to this court, and will hold the other party harmless therefrom.
18. Documents
Mother shall provide father with all medical, mental health, dental, educational, insurance and financial information regarding the children within ninety days. In their absence, mother is to comply with all of father's requests for assistance in locating and gathering same. CT Page 7015
19. Appeals
All the foregoing orders with respect to custody, visitation, child support and alimony shall stand and operate as interim orders of this court during the pendency of any appeal.
Joseph L. Steinberg